Agnes DONNELLY

v.

AETNA LIFE INSURANCE COMPANY
and Aetna Casualty & Surety
Company.

Civ. A. No. 78–393.

United States District Court,
E. D. Pennsylvania.

Feb. 22, 1979.

Stanley B. Gruber, Freedman & Lorry, Philadelphia, Pa., for plaintiff.

Martin Wald, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

**MEMORANDUM**

RAYMOND J. BRODERICK, District Judge.

This is a non-jury case in which the plaintiff seeks severance pay benefits. It is brought under the Employee Retirement Income Security Act of 1974 [ERISA]. The case was heard by the Court on November 30, 1978 and both parties have filed proposed findings of fact and conclusions of law.

The facts in this case are essentially undisputed. Plaintiff, a former employee of defendant, located at 1617 J. F. Kennedy Boulevard, Philadelphia, Pennsylvania, brought this action to recover severance pay benefits allegedly due her under the terms of defendant's severance pay program. Plaintiff was hired by defendant on May 2, 1962 and she left defendant on December 2, 1977. During her tenure as an employee, plaintiff worked as a transcriber, a calculator, and, most recently, as a forms processor. Plaintiff was promoted to the forms processor position in the SAFARI unit (a computer information retrieval system operated by defendant) in May, 1977. This position was rated Class 21. Defendant classifies its positions numerically; compensation increases as job numerical classification increases. On November 8, 1977, plaintiff applied for a Class 22 position in another department by submitting an application through defendant's open posting program. The open posting program was established by defendant's home office as a personnel policy in January, 1974.[1] The Philadelphia office field controller, Louis Forlini, and the Philadelphia general manager, Allanson Crandall, were without authority, independent of the home office, to alter personnel policies. Employees were advised of the open posting program by memoranda when the program was initiated. These memoranda described the program as one permitting transfers to

1. Defendant's employee handbook states that the purpose of the open posting program is to fill open positions with candidates in the company whose qualifications most closely match the requirements of available jobs. Defendant publishes job openings so that employees have opportunities for advancement and new positions without having to leave defendant.

other positions within defendant without fear of management reprimand. Plaintiff indicated a desire to transfer from the SAFARI unit because she was dissatisfied in that unit.

When Mr. Forlini learned that plaintiff had submitted an application for a position which had been posted, he requested a meeting with Ann Terifay, the SAFARI unit supervisor, and plaintiff. The meeting took place on November 9, 1977, in Mr. Forlini's office. Prior to this meeting, Mr. Forlini and Mr. Crandall had met and had decided to require a two year moratorium on all transfer requests from the SAFARI unit. No permission had been obtained from the home office for the moratorium, which was imposed to alleviate a work backlog and turnover problem in the SAFARI unit. Mr. Forlini testified that a training period of some nine to twelve months was necessary to become a Class 21 SAFARI unit forms processor.

At the November 9 meeting, plaintiff was asked by Mr. Forlini to give a two year commitment to remain with the SAFARI unit. Plaintiff did not agree to the two year commitment and stated that she wanted time to consider the request. On November 10, 1977, plaintiff informed Mrs. Terifay and Mr. Forlini that she would not give the two year commitment. They informed her that a replacement would be obtained for her in the SAFARI unit, but that she was free to remain in her position and seek another job with the defendant through open posting. On December 2, 1977, plaintiff was informed by Mrs. Terifay that her replacement had been hired and that she would have until March, 1978, to secure another position through the open posting program. There was no discussion as to what would happen after March, 1978 in the event plaintiff failed to secure a new position. Plaintiff became upset and stated that she was resigning. She immediately tendered a letter of resignation, dated and effective December 2, 1977, in which letter plaintiff stated that her rights under the open posting program had been violated.

Mr. Forlini testified that he was without power to terminate plaintiff's employment. The March 1978 deadline was chosen as a time reference within which plaintiff could have secured another position with defendant. Plaintiff testified that she failed to report to work after December 2, 1977 because of her decision to resign. She agreed that defendant had not discharged her because of union activities, that it had not reduced her pay, demoted her or removed any incentive and that it had not ridiculed or embarrassed her before fellow employees. Mr. Forlini stated that plaintiff was a very capable employee and that she would have been retained by defendant after March, 1978. In fact, Mr. Forlini stated that defendant's policy precluded termination of any employee with ten years of service without communication with the home office. Plaintiff was not in any way barred from returning to the SAFARI unit as a Class 21 forms processor on December 5, 1977, the next working day.

Prior to leaving the defendant, plaintiff had an exit interview with Katherine Hooven, a personnel supervisor. At this interview, pension rights, life insurance, accrued vacation days and withdrawal of money from a company savings plan were discussed; however, neither Mrs. Hooven nor any of defendant's other employees advised plaintiff that she was jeopardizing her rights to severance pay by resigning. Plaintiff testified that she had not seen the severance pay program recorded in defendant's Personnel Policy manual. The manual sets forth guidelines concerning employee eligibility requirements for severance pay. It provides that severance pay should not be awarded to an employee who resigns. The manual specifies that severance pay shall be awarded when an employee is terminated for poor performance or unsatisfactory attendance, when a job is eliminated due to office closing or reorganization, or when prolonged employee absence is due to illness, injury, or pregnancy related disability. Plaintiff acknowledged that her resignation was not due to any of these reasons. Severance pay is also given to an employee whose job is eliminated without the fault of

the employee. The severance pay program provides that eligible employees receive two weeks pay per year of service, up to a maximum of fifty-two weeks, if actual service with the company has been for six years or more. On December 2, 1977, plaintiff received $5.23 per hour for a thirty-five hour work week.

Plaintiff brought this action pursuant to ERISA, § 502(a)(1)(B), which provides that a civil action may be brought by an employee to recover benefits due under the terms of certain plans maintained by an employer. Defendant's severance pay program is such a plan. Defendant's program specifically provides, however, that severance pay shall not be awarded to an employee who resigns. The Court finds that plaintiff voluntarily resigned and is, therefore, not entitled to severance pay benefits.

Plaintiff contends that she did not leave voluntarily, but was forced to resign. She claims that her resignation was involuntary and was, therefore, a constructive discharge. Plaintiff cites in support of this contention cases which discuss constructive discharge under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* Our findings of fact in this case do not contain the essential elements for a constructive discharge finding as enumerated in these cases.

The Fourth Circuit in *J. P. Stevens & Co. v. NLRB*, 461 F.2d 490, 494 (4th Cir. 1972), stated that constructive discharge occurs "[w]here an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job . . . ." The Tenth Circuit followed the *J. P. Stevens* case. The Court found a constructive discharge from deliberate efforts by the employer to render the employee's working conditions intolerable. *Muller v. United States Steel Corp.*, 509 F.2d 923, 929 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). The District of Columbia Circuit and the Eighth Circuit have also followed the intolerable condition rule. *Retail Store Employees Union Local 880 v. NLRB*, 136 U.S.App.D.C. 27, 30, 419 F.2d 329, 332 (1969); *Thompson v. McDonnell Douglas Corp.*, 552 F.2d 220, 223 (8th Cir. 1977). These cases require a finding that the employer coerced the resignation by deliberately making working conditions intolerable. There is no evidence in this record which supports such a finding. Plaintiff was considered a good employee. Her supervisors wanted her to commit herself to two years in the SAFARI unit to alleviate a work backlog caused by employee turnover. When she declined to so commit herself, her supervisors gave her the choice of either remaining in the defendant's SAFARI unit or securing another position with the defendant through the open posting program. The plaintiff was not forced to resign; the Court finds that resignation was the plaintiff's voluntary decision.

Accordingly, an Order will be entered rendering judgment in favor of defendants, Aetna Life Insurance Company and Aetna Casualty and Surety Company, and against plaintiff, Agnes Donnelly.

This memorandum is in lieu of findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).