**John J. DEVINE, Jr., Plaintiff,**

v.

**XEROX CORPORATION, Defendant.**

**Civ. A. No. 84–154–JJF.**

United States District Court,
D. Delaware.

Dec. 23, 1985.

---

Melvyn I. Monzack, of Walsh & Monzack, Wilmington, Del., for plaintiff.

Thomas Stephen Neuberger, Wilmington, Del., for defendant.

## OPINION

FARNAN, District Judge.

Plaintiff, John J. Devine, Jr., brought this action against Xerox Corporation (hereinafter "Xerox") seeking severance pay in the amount of $21,684.00, plus interest, as well as punitive damages and attorney's fees. Plaintiff states four theories under which he is allegedly entitled to relief: (1) Violation of Section 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.; (2) Violation of Section 1109 of the Delaware Wage Payment and Collection Act, 19 Del.C. § 1101 et seq.; (3) Breach of an express or implied agreement to pay severance pay; and (4) Breach of a covenant of good faith and fair dealing. Currently before the Court is Xerox's Motion for Summary Judgment, claiming: (1) That plaintiff was not "constructively discharged", but rather resigned voluntarily, and is thus not entitled to the severance pay he claims; (2) That Plaintiff has failed to state a claim under Counts III and IV because Delaware adheres to the "employment-at-will" rule; and (3) That Counts II, III and IV of the Amended Complaint are preempted by ERISA.

## I. BACKGROUND.

Plaintiff Devine was employed by Xerox as a salesman from 1966 until 1983. Plaintiff's Dep. 4, Docket Item ("D.I.") 29. His position for the last several years prior to his discharge was that of an account representative, with responsibility for Xerox's sales at several major accounts in the Wilmington area. Plaintiff's Dep. 5–6, D.I. 29. Until 1982, plaintiff's performance was satisfactory, and he received numerous company awards in recognition of his sales achievements. Plaintiff's Dep. 10, D.I. 29. However, in 1982 and early 1983, plaintiff did not meet the sales target assigned him. Plaintiff's Dep. 11–13, D.I. 29.

As a result of this poor performance, Xerox initiated disciplinary action against plaintiff in March 1983. Plaintiff's Appendix, Section D, D.I. 28A. On March 1, 1983, plaintiff was placed on "formal coun-

seling" status, the first step in employee discipline, under which specific performance requirements were established with which plaintiff had to comply in order to avoid more serious action.[1] Plaintiff's Appendix Section D, D.I. 28A; Amended Complaint Ex. B–1, D.I. 12. After determining that the performance requirements set for plaintiff had not been met, Xerox elevated plaintiff to "formal warning" status on May 4, 1983. Plaintiff's Appendix Section F, D.I. 28A. On July 25, 1983, plaintiff submitted his resignation, effective August 15, 1983. Plaintiff's Appendix Section C, D.I. 28A.

### A. *Xerox's Severance Pay Guidelines.*

Xerox's internal policy guidelines set forth the conditions under which employees are entitled to severance pay upon departure from the company. These guidelines provide that employees are entitled to severance pay whenever termination of employment is initiated by Xerox, for reasons other than flagrant offenses as defined in Xerox's personnel manual. Amended Complaint, Ex. D, D.I. 12. Xerox does not provide severance pay if an employee voluntarily resigns. However, severance pay is provided when the employee resigns at the request of the company. This is termed "permitted resignation", and is considered to be an involuntary separation. Amended Complaint, Ex. D, D.I. 12.

Severance pay is computed based upon length of service with the company. Employees who have served 15 years or more, such as plaintiff, are entitled to six months' severance pay if otherwise eligible. Amended Complaint, Ex. D, D.I. 12. The guidelines also require several levels of management approval, depending upon length of service, before involuntary separation or permitted resignation can be allowed. In plaintiff's case, involuntary termination would require approval of the President or Chairman of Xerox, while a permitted resignation would require approval of the Corporate Vice President for Personnel. Amended Complaint, Ex. D, D.I. 12.

### B. *Xerox's Alleged Plan to Force Plaintiff's Departure.*

Plaintiff alleges that, beginning in 1982, Xerox initiated a course of action deliberately intended to bring about plaintiff's termination. He alleges that Xerox decreased the number of accounts as well as the size of the territory to which he was assigned, while it increased the dollar volume sales that plaintiff was expected to meet. Devine Dep., D.I. 29, at 10, 13–16, 41–45. This action effectively precluded plaintiff from meeting his sales quotas for the year 1982, as well as the beginning of 1983. Devine Dep., D.I. 29, at 102–105. Plaintiff's sales were further reduced in 1983 by the decision of one of his largest accounts to defer all of its purchasing decisions until 1984, a fact which was known to plaintiff's supervisors when they began disciplinary action against him. Riley Dep., D.I. 26, at 32, 86–88; Berman Dep., D.I. 32, at 55–60. The declining sales that plaintiff experienced caused a reduction in his salary. Devine Dep., D.I. 29, at 40. Also, plaintiff alleges that his fellow employees at Xerox were aware that he had been placed on disciplinary status, and that he was thus subjected to embarrassment, humiliation, and intense pressure to meet unrealistic sales goals. Devine Dep., at 106–112.

---

**1.** Xerox applied a four step policy of progressive discipline to employees whose performance was deemed unacceptable. The first step, "counseling", involved a review of the employee's job requirements with his supervisor, and the establishment of specific performance goals which the employee should meet. At the second step, "oral warning", the employee is advised that a written warning, or possible termination, could result if his problem is not resolved. At the third step, "formal warning", a written warning is issued to the employee defining the problem and the required corrective steps, and emphasizing again the seriousness of the problem and the possibility of probation and termination. At the fourth stage, "probation", the employee is advised that termination may result if improvements in performance are not achieved within a specific time frame. Xerox Policy Memo, "Performance Improvement", Amended Complaint Ex. B–1, D.I. 12.

Plaintiff alleges that the actions taken against him were part of a standard Xerox policy of forcing the most senior sales personnel out of their positions. He alleges that, during his years of service with Xerox, he had witnessed numerous senior sales personnel being demoted or forced out of their positions because their previous job assignments had been taken from them. Devine Dep., D.I. 29, at 14–17. He alleges that, at the time he was placed on disciplinary status, he was the last employee over forty years of age in the Wilmington sales unit. Devine Dep., D.I. 29, at 15. Xerox allegedly maintains this policy of forcing out senior sales personnel because younger sales personnel, with their lower base salaries, are more profitable employees. Devine Dep., D.I. 29, at 28.[2] Plaintiff also alleges that no employee who had ever been placed on "formal warning" status had ever been able to remain with Xerox. Berman Dep., D.I. 32, at 32. He alleges that the above situation placed him under intense pressure, and led him to believe that he would be forced to leave Xerox as well. As a result, plaintiff submitted his "forced letter of resignation". Amended Complaint, Ex. C, D.I. 12; Devine Dep., D.I. 29, at 17.

### C. Plaintiff's Claim for Severance Pay.

Plaintiff claims that his resignation was submitted based upon the understanding that he would be granted permitted resignation status and receive severance pay. Devine Dep., D.I. 29, at 17–19. He alleges that Xerox administrative personnel John Riley, Robert Berman, and Carolyn Reed all assured him that he would in fact be granted permitted resignation status. Devine Dep., D.I. 29, at 116. However, according to Carolyn Reed, a personnel coordinator with Xerox, approval by higher levels of Xerox management is required before a request for permitted resignation status is granted and severance pay awarded. Reed Dep., D.I. 31, at 7; Amended

Complaint, Ex. D, D.I. 12. Reed, Berman, and Riley all claim that they attempted to obtain approval for permitted resignation status for plaintiff, and that an exit interview was arranged for plaintiff with Xerox management in Arlington, Virginia. Berman Dep., D.I. 32, at 38–40; Riley Dep., D.I. 26, at 74–80; Reed Dep., D.I. 31, at 4–8. On the advice of counsel, plaintiff did not attend the exit interview. Devine Dep., D.I. 29, at 86–90. Because of his refusal to meet with senior management, Xerox informed plaintiff by letter, on October 5, 1983, that his request for permitted resignation was denied. Amended Complaint, Ex. F, D.I. 12. Plaintiff claims that he was never informed that a grant of permitted resignation status or severance pay was dependent upon his attending such a meeting. Devine Dep., D.I. 29, at 89.

### II. DISCUSSION.

Summary judgment, under Rule 56(c), is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Federal Laboratories, Inc. v. Barringer Research Ltd.*, 696 F.2d 271, 274 (3rd Cir.1982). In considering a Motion for Summary Judgment, the evidence must be viewed in a light most favorable to the party opposing the motion, with all reasonable inferences drawn in that party's favor. *Small v. Seldows Stationery*, 617 F.2d 992, 994 (3rd Cir.1980).

Defendant's Motion for Summary Judgment raises three issues: (1) whether Xerox's severance pay plan is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1), and thus governed by ERISA; (2) if the severance pay plan is governed by ERISA, whether plaintiff's state law claims are preempted by ERISA; and (3) viewing the evidence most favorably towards plaintiff, whether plaintiff is not entitled to severance pay under any legal theory.

---

**2.** After his departure from Xerox, plaintiff filed charges with the EEOC alleging age discrimination. See Devine Dep., D.I. 29, at 28.

## A. *Severance Pay.*

■ ERISA was enacted to protect the interests of employees and their beneficiaries in employee benefit plans. *See Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361–62, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). The statute protects both "employee pension benefit plans", which provide for income deferral or retirement income, 29 U.S.C. § 1002(3), as well as "employee welfare benefit plans", which provide benefits for contingencies such as illness, accident, disability, death, or unemployment. 29 U.S.C. § 1002(1). The statute also sets uniform standards for reporting, disclosure, and fiduciary responsibility for both pension and welfare plans. 29 U.S.C. §§ 1021–1031, 1101–1114. ERISA grants participants and beneficiaries of pension plans and welfare benefit plans the right to sue in federal court for benefits due under the plans. 29 U.S.C. § 1132(a)(1)(B).

■ In Count I of the Amended Complaint, plaintiff argues that defendant's severance pay plan is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1). That section defines "employee welfare benefit plan" to include:

Any plan, fund, or.program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise (a) ... benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits ... or (b) any benefit described in Section 186(c) of this Title (other than pensions on retirement or death and insurance to provide such pensions). 29 U.S.C. § 1002(1).

Section 186(c), included by reference within Section 1002(1), in relevant part describes as benefits "pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs." 29 U.S.C. § 186(c)(6). Department of Labor regulations promulgated under ERISA state that the effect of ERISA's reference to Section 186(c) "is to include within the definition of 'welfare plan' those plans which provide holiday and severance benefits, and benefits which are similar ..." 29 C.F.R. § 2510.3–1(a)(3). Thus, Xerox's severance pay plan is clearly an employee welfare benefit plan to which ERISA applies. *See Petrella v. NL Industries, Inc.*, 529 F.Supp. 1357, 1361–62 (D.N.J.1982); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir.1985); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 n. 4 (11th Cir.1982); *Pinto v. Zenith Radio Corp.*, 480 F.Supp. 361 (N.D.Ill.1979) *aff'd*, 618 F.2d 110 (7th Cir.1980).

## B. *Preemption of State Claims by ERISA.*

In its Motion for Summary Judgment, Xerox argues that Counts II, III and IV of the Amended Complaint are preempted by ERISA because they are based on state law. 29 U.S.C. § 1144(a); *Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 2899–2901, 77 L.Ed.2d 490 (1983). At oral argument, plaintiff conceded that, if Xerox's severance pay plan was covered by ERISA, plaintiff's state-based claims would be preempted. Therefore, having found that Xerox's severance pay plan is in fact covered by ERISA, the Court need not examine the preemption question at this time.

## C. *Plaintiff's Entitlement to Severance Pay.*

Xerox argues that, under the undisputed material facts, plaintiff is not entitled to severance pay under its guidelines as a matter of law, because his termination was neither initiated by Xerox, nor was he granted permitted resignation status. Xerox argues that plaintiff has not shown sufficient facts to support a finding that he was "constructively discharged", nor has he shown facts to support a finding that his resignation was conditioned upon his receiving permitted resignation status.

■ The doctrine of constructive discharge has been applied in actions for severance benefits under Section 1132(a)(1)(B)

of ERISA. *See Donnelly v. Aetna Life Insurance Co.,* 465 F.Supp. 696, 698 (E.D. Pa.1979). *See also Lojek v. Thomas,* 716 F.2d 675, 680–81 (9th Cir.1983). The applicable standard in the Third Circuit for determining whether a constructive discharge has occurred is whether "the employer knowingly permitted conditions of [employment] so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Systems Co.,* 747 F.2d 885, 888 (3rd Cir.1984). This standard requires the employer's deliberate creation of intolerable conditions, rather than a specific intent to get rid of the employee. *See Goss,* 747 F.2d at 887–88; *Ferguson v. E.I. duPont de Nemours & Co., Inc.,* 560 F.Supp. 1172, 1202–03 (D.Del.1983); *EEOC v. Hay Associates,* 545 F.Supp. 1064, 1085 (E.D.Pa.1982).[3]

■ From the record before the Court as outlined *supra,* it is clear that numerous issues of material fact remain. Plaintiff has alleged that Xerox follows a consistent practice of forcing the most senior sales personnel to leave their positions. He has identified several former members of the Sales Department whom he alleges were subjected by Xerox to similar pressures, and who were forced to leave their positions. He has outlined a course of action taken by Xerox, beginning in 1982, whereby his territories and accounts were systematically reduced, at the same time that his sales quotas were substantially increased. He has also alleged that, on at least one occasion, he was deliberately "humiliated" by one of his supervisors in front of one of his most important clients. Xerox has denied all of these factual allegations. Clearly, a fact-finder believing these facts and drawing all reasonable inferences could find that Xerox had deliberately made plaintiff's working conditions so intolerable that a reasonable person would have been forced to resign. Thus, since there are numerous issues of material fact,

**3.** Although the Third Circuit has applied this standard primarily in labor relations and employment discrimination litigation, the Court finds the same standard to be appropriate in

summary judgment would be inappropriate.

## III. CONCLUSION.

In summary, Xerox's severance pay plan is an "employee welfare benefit plan" within the definition of 29 U.S.C. § 1002(1), and is thus covered by the protections of ERISA. Since plaintiff concedes that his state-based claims are preempted if the plan is governed by ERISA, partial summary judgment shall be granted for defendant on Counts II, III and IV of plaintiff's Amended Complaint. However, summary judgment on Count I of the Amended Complaint, alleging violations of ERISA, shall be denied.

actions under ERISA. *See Donnelly,* 465 F.Supp. at 698. *See also Lojek,* 716 F.2d at 680–81.