Irving GILBERT, Irene Prince, David J. Frank, Herbert P. Kaplan, Bernard H. Largman, Phillip R. Mullins, Dora Nicolini, Herbert Peppel, Bertha Richie, David Schoeneck, Raquel R. Silensky, Marie Silvestri, Brenda Tillman Humphreys, B. Gaither Shaw, Jr., Michael Loschenko, Robert E. Ahrens, Benjamin F. Blye, Jr., David H. Brunt, Jack R. Carpenter, Kenneth E. Eckard, Ronald F. Gauthier, Louis Gorelick, Jeremy Harris, Ronald H. Hicks, Robert D. Huddleston, Thomas R. Jerome, Gaston D. Lopez, Dorothy Novak, Anthony J. Petronis, Bernard Porvin, Charles A. Powers, Saul Roth, James A. Sbarboro, John Sells, James M. Stutts, and Gordon L. Van Dusen, Plaintiffs-Appellants,

Lillian Roberts, as Commissioner of Labor of the State of New York, Plaintiff-Intervenor-Appellant,

v.

BURLINGTON INDUSTRIES, INC., Defendant-Appellee.

Nos. 902, 943, 953, Dockets 84–7824, 84–7908 and 84–7914.

United States Court of Appeals, Second Circuit.

Argued March 11, 1985.

Decided June 17, 1985.

---

Victor Rabinowitz, New York City (Emily Bass, Terry Gross, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, of counsel), for plaintiffs-appellants.

Jane Lauer Barker, Deputy Bureau Chief, New York City (Robert Abrams, Atty. Gen. of the State of New York, Robert Hermann, Sol. Gen., O. Peter Sherwood, Deputy Sol. Gen., Carlin Meyer, Asst. Atty. Gen. in Charge of Labor Bureau, New York City, of counsel), for plaintiff-intervenor-appellant.

Daniel Riesel, New York City (Lawrence R. Sandak, Sive, Paget & Riesel, P.C., New York City, of counsel), for defendant-appellee.

Lacy H. Thornburg, N.C. Atty. Gen., Tiare B. Smiley, Asst. Atty. Gen., Dept. of Justice, Raleigh, N.C., John C. Brooks, N.C. Com'r of Labor, Thomas A. Harris, Director, Wage and Hour Div., N.C. Dept. of Labor, Raleigh, N.C., filed a brief, for amici curiae for the States of Alaska, Conn., Hawaii, Ill., Md., Mont., N.C., Okl., Vt., Wis., and the District of Columbia.

Before TIMBERS, CARDAMONE and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge.

We review on this appeal an employer's severance pay policy to decide whether it is an ERISA plan that preempts a state from ordering an employer to pay benefits to departing employees. By the terms of the employer's manual, eligibility to receive severance pay was limited to those employees "involuntarily terminated" from the company, *i.e.*, separated from the employer's payroll and not later reemployed by the company. Eligibility for benefits thus was to be determined by the discontinuity of an employee's employment—its severance—and not by the duration of unemployment, however fleeting that might be. Here, there was a purchase of one of the company's operating divisions as a going concern; plaintiffs are employees of that division. For plaintiffs this was not a temporary leave-taking, but a permanent part-ing-of-the-ways with their former employer. For the reasons discussed below, we hold that the employer's severance pay plan is an employee benefit plan under ERISA and that the state is preempted from granting benefits to plaintiffs. Plaintiffs must seek relief from what they consider to be an arbitrary denial of their severance benefits under federal, not state, law.

I

FACTS AND PROCEEDINGS BELOW

Plaintiffs, 36 former employees of Burlington Industries, a textile manufacturer, have brought suit against Burlington claiming that severance pay is owed them upon termination of their employment. In their complaint plaintiffs assert eleven claims, seven seek relief under state law and four under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* (ERISA or Act). The state law claims include causes of action under New York Labor Law § 198-c, North Carolina General Statutes § 95-25, and common law theories of fraud, unjust enrichment, promissory estoppel, quantum meruit, and breach of contract. Prior to the commencement of this action, a number of the present plaintiffs filed claims with the New York State Department of Labor and obtained an order from the Commissioner of Labor that directed Burlington to pay them severance benefits. When Burlington appealed this ruling to the State Industrial Board of Appeals and sought a stay of the Commissioner's order, plaintiffs commenced the instant federal action in which the State Commissioner was later granted leave to intervene as a party plaintiff.

This appeal is from a judgment, entered in the United States District Court for the Southern District of New York (Brieant, J.) on October 30, 1984, which dismissed plaintiffs' state law claims on the grounds of preemption, dismissed the complaint made by the New York State Commissioner of Labor as intervenor for the same reason, and enjoined the Commissioner from en-

forcing compliance orders she had issued against Burlington. Plaintiffs' four claims that seek relief under ERISA were not dismissed.

Although plaintiffs worked in 16 different states, they all reported to Burlington's merchandising headquarters in New York. In 1982 Burlington sold its operation as a going concern to Kayser-Roth. The employees continued to do the same work as they had before the sale. In order to ensure that its employees would accept employment with Kayser-Roth, Burlington agreed not to retain employees Kayser-Roth wished to hire, and also agreed not to rehire them for at least six months after the sale. Plaintiffs contend that they were employed by Kayser-Roth at a lower rate of compensation, while Burlington argues that the benefit package paid its former employees was comparable to their previous earnings.

Burlington's severance pay policy was contained in a manual that was not distributed to employees. The policy reads, in relevant part:

I. Company Policy

A. General—The Company makes payroll severance payments and vacation severance payments to eligible salaried employees who are terminated from the Company.

B. Payments—Payroll severance payments are based upon tables contained in this policy. Vacation severance payments are based upon a person's length of continuous service with the Company less vacation taken or adjusted as defined by this policy.

II. Application of Policy

A. Payroll Severance—All regular full-time salaried employees who meet eligibility requirements are paid payroll severance based upon continuous service as shown in Exhibit A or Exhibit B.

1. Eligibility—Employees are eligible to receive payroll severance if they are regular full-time salaried employees who

are *involuntarily terminated from the Company.* Eligibility requirements are:

a. Job Elimination—This category consists of terminations due to circumstances such as elimination or modification of operations or other *job elimination* due to bona fide organizational changes (emphasis added).

.     .     .     .     .

A summary description of the severance policy was contained in an employee handbook, which read:

The Company provides severance pay to full time employees who *involuntarily leave the company.* Pay ranges from two weeks to 12 months, based on the employee's age and length of continuous service with the company. Fraud or other behavior deemed to be willful could disqualify an employee from receiving severance benefits (emphasis added).

The granting or denial of severance pay was automatic upon termination. Plaintiffs allege that Burlington never sought to comply with ERISA respecting its severance pay policy. That is, they claim that: it never published or filed an annual report, a financial statement, a plan description or a statement of plan modifications; it did not designate a fiduciary for the plan or inform employees of their rights under ERISA and the plan; there was no established claims procedure; and, apart from the company's "open door" grievance policy, there was no established appeals procedure. The first time Burlington filed the required annual ERISA disclosure report regarding severance pay was after plaintiffs filed claims with the New York State Department of Labor.

Shortly before the sale to Kayser-Roth, Burlington's employees were informed that they were deemed ineligible for severance benefits, whether or not they accepted a position with Kayser-Roth. Although plaintiffs were never unemployed, as they immediately accepted positions with Kayser-Roth, they claimed they were entitled to severance pay under the plain language of the company's policy. When Burlington refused to make severance payments, ten

of the present plaintiffs asserted before the State Department of Labor that they were entitled to severance pay, and the Commissioner issued orders under the New York Labor Law requiring Burlington to pay such benefits. Burlington petitioned the State Industrial Board of Appeals to review the Commissioner's decision. Before scheduled hearings could be held, plaintiffs commenced the instant action in the district court asserting claims under state law, and alternatively, under ERISA. The Commissioner intervened demanding that Burlington pay severance benefits in accordance with § 198–c of the New York Labor Law, which makes it a misdemeanor not to pay wages or wage supplements due employees. N.Y.Lab.Law § 198–c (McKinney Supp.1984–1985).

In its well-considered opinion, the district court held that Burlington's severance pay policy was an ERISA plan, under either 29 U.S.C. § 1002(1)(A) or § 1002(1)(B). It found that an ERISA plan did not need to have assets separate from the general assets of the employer, that a severance pay plan did not need to be established as a Taft-Hartley trust under § 1002(1)(B) and that, in any event, severance pay was the same as unemployment benefits and a severance policy was consequently a "welfare plan" under § 1002(1)(A). The district court found as a matter of law that severance pay constitutes an unemployment benefit because it requires an "instantaneous unemployment between engagements." The factual issue of whether longer unemployment was a prerequisite under the terms of Burlington's policy was not decided. The district court further held that ERISA preempted the state law causes of action. It therefore permanently enjoined the proceedings before the State Industrial Board and enforcement of its Orders to Comply with the Commissioner's decision pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Judge Brieant denied the Commissioner's application to stay the federal action and, on his own motion, certified his decision on preemption for immediate review by this Court pursuant to Fed.R. Civ.P. 54(b). Plaintiffs and the State of New York were joined on the appeal by ten states and the District of Columbia that filed briefs as amici curiae.

This appeal presents three principal questions: first, whether the district court was correct in holding that an unfunded severance pay policy is an ERISA plan under either § 1002(1)(A) or § 1002(1)(B); second, if Burlington's severance policy is an ERISA plan, whether the plaintiffs' state law claims and § 198–c (insofar as it applies to severance plans) are preempted; finally, whether Burlington should be estopped from raising a defense of preemption because it allegedly never sought to comply with ERISA's protective reporting and disclosure requirements.

## II

### DOES AN UNFUNDED SEVERANCE PAY POLICY CONSTITUTE A WELFARE BENEFIT PLAN WITHIN THE MEANING OF ERISA?

The first issue is whether Burlington's severance pay policy constitutes an employee welfare benefit plan under § 3 of ERISA. 29 U.S.C. § 1002(1). Amici and plaintiffs argue that a promise or agreement to pay severance benefits, without more, does not constitute a welfare benefit plan within the meaning of ERISA. If the severance pay plan is not one governed by ERISA then, of course, the common law and statutory claims are not preempted. Section 3(1) of ERISA defines an "employee welfare benefit plan" or "welfare plan" to include:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day

care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title [§ 302(c) of the Labor-Management Relations Act] (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). Section 1002(1)(A) enumerates a number of benefits, including unemployment benefits, but severance benefits is not included among them. Section 1002(1)(B) includes within the definition of a welfare plan "any benefit" described in 29 U.S.C. § 186(c), but § 186(c) refers only to *pooled* severance benefits.

■ Although severance pay is often a reward for past service, it also serves the same purpose as unemployment benefits. When ties that bind an employee to his or her company are severed by the employer, unemployment for the employee—whether fleeting or permanent—is an inexorable consequence. Thus, in our view severance pay is an unemployment benefit and an unfunded severance pay policy constitutes an "employee welfare benefit plan" under § 1002(1)(A). *See Jung v. FMC Corp.,* 755 F.2d 708, 710 n. 2 (9th Cir.1985); *Petrella v. NL Industries,* 529 F.Supp. 1357, 1361 (D.N.J.1982). *See also Sly v. P.R. Mallory & Co.,* 712 F.2d 1209, 1211 (7th Cir.1983).

We also conclude that an unfunded severance pay policy is an "employee welfare benefit plan" under § 1002(1)(b). *See, e.g., Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502 (9th Cir.1985); *Dhayer v. Weirton Steel Division of National Steel Corp.,* 571 F.Supp. 316, 329–330 (N.D.W.Va.), *aff'd,* 724 F.2d 406 (4th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984); *Pinto v. Zenith Radio Corp.,* 480 F.Supp. 361, 363 (N.D.Ill.1979), *aff'd mem.,* 618 F.2d 110 (7th Cir.1980). *Donnelly v. Aetna Life Insurance Co.,* 465 F.Supp. 696, 698 (E.D.Pa.1979).

We base our view on the reasonableness of a regulation that construes § 1002(1)(B) to include severance pay. The United States Department of Labor regulation interpreting § 1002(1)(B) does not limit its definition of a plan to a severance pay policy that is pooled or funded by a trust fund. *See* 29 C.F.R. § 2510.3–1(a)(3) (1984); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9th Cir.1985). The regulation includes unfunded severance pay benefits as within the definition of a "welfare plan," and reads:

> Moreover, only paragraph (6) describes benefits not described in section 3(1)(A) [29 U.S.C. § 1002(1)(A)] of the Act. The benefits described in section 302(c)(6) of the LMRA [29 U.S.C. § 186(c)(6)] but not in section 3(1)(A) of the Act are "* * * holiday, severance or similar benefits". *Thus, the effect of section 3(1)(B) of the Act is to include within the definition of "welfare plan" those plans which provide holiday and severance benefits, and benefits which are similar (for example, benefits which are in substance severance benefits, although not so characterized).*

29 C.F.R. § 2510.3–1(a)(3) (1984) (emphasis added).

Amici correctly note that the regulation bases its conclusion on paragraph (6) of § 186(c), 29 U.S.C. § 186(c)(6), which allows payments by an employer to a "trust fund" established for the purpose of *"pooled* vacation, holiday, severance or similar benefits." *Id.* (emphasis added). From this they argue that the regulation is inconsistent with that language. They urge that as severance benefits were not enumerated in subparagraph (A) of § 1002(1), but were incorporated only in subparagraph (B), then unless severance payments are made out of a *fund* described in § 186(c), a severance pay policy is not an ERISA plan.

■ We recognize the well-established rule that "[a]lthough an agency's interpretation of the statute under which it operates is entitled to some deference, 'this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.'" *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (citation omitted). In plaintiffs' view none of the decisional law that finds unfunded severance

pay practices to be plans—when those courts summarily accept jurisdiction under ERISA for such claims—has adequately analyzed either the legislative history or the full language of the LMRA provisions relating to trusts. We find that a review of the legislative history supports the reasonableness of the Department of Labor's construction of § 1002(1)(B).

The Report of the Senate Committee on Labor and Public Welfare indicates that subsection (B) had its genesis in "[a]n amendment offered by Senator Javits extending coverage of the fiduciary and disclosure amendments to the [Welfare and Pension Plans Disclosure Act] to all benefit arrangements *described in or permitted by*" § 186. S.Rep. No. 127, 93rd Cong., 2d Sess. 3 (1973), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4838, 4851 (emphasis added). Burlington argues that "described in or permitted by" indicates an intent to include plans funded other than through a Taft-Hartley trust, since such plans would not be "permitted by" but would be "described in" § 186. Use of the phrase "described in"—the only phrase ultimately chosen by Congress to use in the Act—arguably expresses a purpose to encompass all *types* of benefits that are enumerated in § 186(c), even those benefits not permitted under the section because they are not funded through a trust. In consequence, we conclude that the U.S. Department of Labor's interpretation that an unfunded severance pay policy is an "employee welfare benefit plan" under § 1002(1)(B) is a reasonable construction of the statute and entitled to judicial deference.

Amici and plaintiffs assert that Burlington's unfunded severance pay policy is, instead of an ERISA plan, merely a "payroll practice" under Department of Labor regulations. They argue that severance pay is included under a regulation that lists payments of compensation out of an employer's general assets during periods of absence due to sickness, vacation, holiday, and other reasons. *See* 29 C.F.R. §§ 2510.-3–1(b)(3) (1984). Although this provision is specific and does not include severance pay benefits, we recognize that it was not meant to be exhaustive. *See id.* § 2510.3–1(a)(4). But, as we have concluded for other reasons that an unfunded severance pay policy is included within the definition of "welfare plan," we decline to read unfunded severance pay benefits into the catch-all provision of the regulation defining payroll practices. Perhaps severance pay is distinguished from other designated payroll practices because those set forth in the regulations occur during the course of employment, while severance pay occurs only after termination. *See Scott,* 754 F.2d at 1503. Moreover, an employer faced with the loss of many employees may owe a large amount in severance pay, increasing the risk that it might default on its severance pay obligations because of a lack of funds. This financial loss to employees is a primary concern of ERISA. *Id.*

### III

ARE PLAINTIFFS' STATUTORY AND COMMON LAW CLAIMS PREEMPTED BECAUSE THEY "RELATE TO" THE PLAN?

We turn to consider whether ERISA preempts plaintiffs' statutory and common law claims. The Act was aimed to occupy fully the field of employee benefit plans and to establish it "as exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). Section 514(a) of ERISA states that it "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan [within its coverage]." 29 U.S.C. § 1144(a) (emphasis added). Congress defined the term "State" to include "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." 29 U.S.C. § 1144(c)(2). Although there has been uncertainty as to when a state law "relates to" a plan, the Supreme Court's opinion in *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), established that "re-

lates to" must be construed in its "normal sense"—that is, a state law claim is preempted "if it has a connection with or reference to such a plan." *Id.* at 97, 103 S.Ct. at 2900 (footnote omitted). *Shaw* rejected the view that common law causes of action or state regulatory statutes are preempted only when they attempt to regulate an area expressly covered by ERISA, such as reporting, disclosure and fiduciary responsibility. *Id.* at 98, 103 S.Ct. at 2900.

Relying on *Rebaldo v. Cuomo,* 749 F.2d 133 (2d Cir.1984), plaintiffs assert that the claims here do not "relate to" the plan. In that case, we held that a purely local transaction was at issue and the state law affected the plans in " 'too tenuous, remote or peripheral a manner to warrant a finding that the law "relates to" the plan.' " *Id.* 463 U.S. at 138, 103 S.Ct. at 2905 (quoting *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). The law at issue in *Rebaldo* indirectly increased the cost of doing business. We explained that when "a State statute of general application does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated." *Id.* at 139, 103 S.Ct. at 2905 (footnote omitted); *see also American Progressive Life & Health Insurance Co. v. Corcoran,* 715 F.2d 784, 787 (2d Cir.1983) (commission scales adopted by state regulation might indirectly affect levels of benefits provided by insurer, but such was so peripheral to ERISA as not to be preempted by it). In this case, on the other hand, the state law claims seeking to enforce the severance pay policy would determine whether any benefits are paid, and directly affect the administration of benefits under the plan. As noted, the plaintiffs here were employed in 16 different states. The policy favoring national uniformity in this field, therefore, strongly supports preemption.

▇▇▇ Plaintiffs, joined by amici, also urge that absent a clear expression from Congress, ERISA cannot be deemed to preempt state wage collection statutes be-

cause such legislation is a fundamental exercise of the states' police power. *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). They argue that wage collection statutes are no less important an exercise of traditional police powers than those state domestic relations laws found not to be preempted in *American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118 (2d Cir.1979). There, we held that ERISA does not preempt state domestic relations laws that affect distribution of pension benefits. *Id.* at 121. But in *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323 (2d Cir.1982), *aff'd sub nom. Arcudi v. Stone & Webster Engineering Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), we made clear that to avoid preemption it is not sufficient that the state statute represent the exercise of a traditional police power. 690 F.2d at 330. In order to avoid being preempted, a state law in addition to being an exercise of traditional police powers must also affect the plan "in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; *Authier v. Ginsberg,* 757 F.2d 796, 800 n. 6 (6th Cir.1985). Although the regulation of the employment relationship under New York Labor Law § 198–c is an exercise by the State of its traditional police powers, the state statute does not have such a remote and tenuous connection to Burlington's severance pay plan so as to allow us to conclude that it does not "relate to" it.

Amici finally urge that claims by employees to enforce the direct liability of employers for promised wages and benefits coexist with any rights plan beneficiaries may have to sue employee benefit plans under ERISA. They argue that the Supreme Court in *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980), and circuit courts since *Nachman,* have distinguished between direct contractual liability that an employer has to its employees, and statutory liability under ERISA. The short answer to this argument is that *Nachman*

and its progeny were based on federal rather than state law. As the plaintiffs are asserting state law claims, the district court properly found plaintiffs' claims preempted.

Other courts have found state law causes of action preempted when they were based on claims for relief under the common law of contracts, *see, e.g., Lafferty v. Solar Turbines Int'l*, 666 F.2d 408, 409 (9th Cir. 1982); *Ogden v. Michigan Bell Telephone Co.*, 571 F.Supp. 520, 524 (E.D.Mich.1983); *Tolson v. Retirement Committee of the Briggs & Stratton Retirement Plan*, 566 F.Supp. 1503, 1503–04 (E.D.Wisc.1983); *Shaw v. Intn'l Ass'n of Machinists*, 563 F.Supp. 653, 658–59 (C.D.Cal.1983); or state regulatory statutes, including § 198–c, *see, e.g., Trustees of Sheet Metal Workers' Int'l Ass'n Production Workers' Welfare Fund v. Aberdeen Blower and Sheet Metal Workers*, 559 F.Supp. 561, 562 (E.D.N.Y.1983); *Calhoon v. Bonnabel*, 560 F.Supp. 101, 107–10 (S.D.N.Y.1982); *California Hospital Ass'n v. Henning*, 569 F.Supp. 1544, 1547 (C.D.Cal.1983). To hold otherwise would undermine the uniformity in plan administration that the Act was designed to promote.

## IV

### SHOULD BURLINGTON BE ESTOPPED FROM RAISING THE DEFENSE OF PREEMPTION?

■ We turn finally to consider whether, even though a plan is established subject to ERISA's coverage section, Burlington should be estopped from raising the defense of preemption because it failed to comply with the Act's applicable reporting, disclosure and fiduciary requirements. ERISA is designed to provide employees with information about their rights under the plan so that they may police its administration. *See* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 4639, 4649. Plaintiffs argue that since Burlington benefited from its failure to comply with these statutory requirements, it should be estopped from relying on the Act to avoid its contractual and state law obligations.

Burlington responds that it would be incongruous for an employer maintaining an informal plan to be able to circumvent the Act by failing to comply with its requirements. *See Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982). Courts that have accepted plaintiffs' argument have done so in the context in which an employer sought to avoid liability under ERISA. *See, e.g., id.* A different situation is presented here—the employer does not seek to avoid the strictures of ERISA by means of previous noncompliance, but rather raises preemption as a legal defense to state law obligations otherwise applicable to it. A serious risk of unfairness may exist when an employer that has never sought to comply with ERISA wants to use the Act's broad preemption provision to avoid potential liability to its employees under state law.

In *Blau*, 748 F.2d 1348, this dilemma was appropriately resolved. There it was held that the state law claims were preempted, even though the employer had totally failed to comply with ERISA. *Id.* at 1356. But rather than simply reviewing the employer's denial of severance pay to see if it was a reasonable construction of the terms of the policy, *see Slack v. Burlington Industries*, No. C–83–274–G (M.D.N.C. Oct. 17, 1984), *appeal docketed*, Nos. 84–2241(L), 84–2257 (4th Cir. Nov. 11, 1984), the court reviewed that denial in the context of the employer's failure to comply with ERISA's requirements. Recognizing that ordinarily there is no remedy for the violation for procedural requirements, the court held that in some circumstances noncompliance with procedural requirements will "work a substantive harm." *Blau*, 748 F.2d at 1354. It concluded that the employer had been arbitrary and capricious in adding a term to its severance pay policy. *Id.; see also McLaughlin v. Connecticut General Life Insurance Co.*, 565 F.Supp. 434, 447 n. 9 (N.D.Cal.1983) ("in order to enforce ERISA's fiduciary standards for claims denials, it may be appropriate ... to apply [strict rules of construction] when the ERISA fiduciary making the denial [has] a financial interest in the decision").

We adopt that approach because it adequately protects the rights of employees with respect to the severance pay benefits, and best effectuates Congress's aim to promote the uniform administration of employee benefits. It both eliminates any incentive on the part of employers not to comply with the Act's reporting, disclosure and fiduciary requirements, and avoids inconsistent treatment of claims under state law. Thus, it is unnecessary and undesirable to hold Burlington estopped from raising the defense of preemption. The question of whether Burlington's violations of ERISA's requirements sufficiently taint its denial of severance pay so as to warrant a finding that it was arbitrary and capricious is not before us. That determination is left to the judgment of the district court. *Compare Blau,* 748 F.2d 1348 (violations sufficient under facts of case to warrant finding that denial was arbitrary) *with Jung,* 755 F.2d 708 (no violations sufficient under facts of case to warrant finding that denial was arbitrary).

## V

### REMAINING CONTENTIONS

There is no merit to plaintiffs' remaining contentions. When Congress under ERISA has preempted the entire field of employee benefit plans, an argument for federal abstention founded upon substantial disruption to state policies extending beyond the present controversy is not properly made under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

Nor is there merit to the contention that the district court improperly enjoined the state administrative proceeding. Since there is a plan, Burlington is a fiduciary with respect to that plan, *see Jung,* 755 F.2d at 710, and is authorized under the statute to seek an injunction of the state proceedings. *See* 29 U.S.C. § 1132(a)(3). Granting the injunction did not violate the Anti-Injunction Act, 28 U.S.C. § 2283, even assuming that the Anti-Injunction Act applies to administrative proceedings of the Industrial Board of Appeals, *see Town of Springfield v. McCarren,* 549 F.Supp.

1134, 1151 (D.Vt.1982), *aff'd mem.,* 722 F.2d 728 (2d Cir.1983), because the injunction falls within the Act's exception for actions "expressly authorized" by federal law.

### CONCLUSION

Accordingly, the judgment appealed from is affirmed.