William SHEA, Michael McGuire, Michael Kelly, And All Other Persons Similarly Situated, Plaintiffs-Appellants,

v.

WELLS FARGO ARMORED SERVICE CORPORATION, Defendant-Appellee.

No. 228, Docket 86–7471.

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1986.

Decided Feb. 4, 1987.

Warren Mangan, Long Island City, N.Y. (O'Connor & Mangan, Long Island City, N.Y., of counsel), for plaintiffs-appellants.

Richard Appel, Washington, D.C. (Avrum M. Goldberg, Daniel L. Nash, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., of counsel), for defendant-appellee.

Before MESKILL, MINER and ALTIMARI, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs-appellants, former employees of Wells Fargo Armored Service Corporation, appeal from a summary judgment entered in the United States District Court for the Eastern District of New York (Nickerson, J.) in favor of defendant-appellee Wells Fargo. The district court's opinion is reported at 637 F.Supp. 73 (E.D.N.Y. 1986). Appellants' complaint asserted violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (1982) ("ERISA"), and pendent state claims resulting from appellee's refusal to pay accumulated sick leave and vacation benefits. Appellants' state contract, fraud, and misrepresentation claims were dismissed. The district judge also dismissed the ERISA claims, holding that the benefits upon which the suit was predicated did not constitute an "employee welfare benefit plan" within ERISA coverage. The district court therefore granted Wells Fargo's motion for summary judgment.

On appeal, appellants challenge the district court's dismissal of the ERISA claims by renewing their assertion that the benefits at issue are within the purview of ERISA. We affirm.

## I. BACKGROUND

At all times relevant to this action, appellants were members of Truck Drivers Local Union No. 807, International Brotherhood of Teamsters ("Local 807"). As of January 1, 1980, all had completed at least ten years of service for their employer, appellee Wells Fargo Armored Service Corporation. From March 4, 1977 until April 13, 1980, a collective bargaining agreement governed appellants' sick leave and vacation wages, among other terms of employment. Under the contract, employees were entitled to a maximum of five days of sick leave each year. Any unused sick leave either could be carried over to the following year, or be "cashed out" at the employee's current wage. The contract permitted accumulation of no more than one year's benefits, and it did not allow payment for unused sick leave upon termination of employment.

With respect to vacation pay, employees were given a maximum of four weeks of annual vacation, depending upon seniority. In lieu of using vacation time during the year in which it was earned, employees were allowed either to carry all or some of it over to the following year, or, with the employer's approval, the employee could forgo all or some vacation and be paid for it. The contract provided that upon termination of employment for any reason, employees would be paid on a prorated basis for all vacation time earned during the year in which termination occurred, in addition to any accumulated vacation time carried over from the preceding year. The agreement also contained arbitration provisions requiring either party to notify the other of an intent to arbitrate a dispute arising under the contract within ten days after written rejection of the grievance.

On April 14, 1980, the members of Local 807, including appellants, began a strike against Wells Fargo. Wells Fargo withdrew recognition from Local 807 on June 2, 1980 and subsequently began to hire new employees to replace the strikers. Throughout June of 1980, the union's business manager repeatedly demanded payment of the sick leave and vacation pay that had accrued during 1980. Officers of Wells Fargo, including its vice president for operations, assured the union's business agent that the accrued benefits for 1980 would be paid at the end of the year. Wells Fargo made payment to the union in July for unused sick leave and vacation pay that had accrued in 1979.

On December 21, 1980, Local 807 demanded in writing that Wells Fargo make payment for 1980 sick pay owed under the collective bargaining agreement. Wells Fargo refused, by letter dated January 12, 1981, claiming that no monies were owed to the "former employees." On February 5, 1981, the union served written demand on Wells Fargo for the vacation pay that had accrued during 1980 under the contract.

Again, Wells Fargo rejected the demand in a letter dated March 19, 1981.

On January 28, 1982, ten months after the date of Wells Fargo's second letter, Local 807 served notice of its intention to arbitrate the refusal to make payment for the sick leave and vacation wages that had accrued between January 1, 1980 and April 13, 1980. Relying on the time limitations contained in the grievance procedure and arbitration provisions of the labor contract, the arbitrator on May 18, 1983 found that appellants' attempt to arbitrate was untimely and that he was therefore without authority to rule on the merits of the claims.

Appellants then filed suit to recover these payments on October 14, 1983 in the United States District Court for the Eastern District of New York. In addition to unsuccessful fraud and misrepresentation claims, which are not before us on appeal, appellants contended that Wells Fargo's refusal to pay the accrued 1980 benefits violated ERISA, 29 U.S.C. § 1001 *et seq.* (1982). Judge Nickerson determined that the sick pay and vacation wages at issue did not constitute an "employee welfare benefit plan" under ERISA, and instead characterized them as "payroll practices," which are excluded from ERISA coverage. Because the judge determined that appellants had no independent statutory action under ERISA, and that they had failed to comply with the ten-day time limitation provisions of the labor agreement, he dismissed appellants' claims and granted Wells Fargo's motion for summary judgment. Before us on appeal is Judge Nickerson's determination that the contractual provisions for accumulated sick leave and vacation wages do not establish an employee welfare benefit plan subject to ERISA coverage.

## II. DISCUSSION

■ Appellants' attempt to compel payment of the sick leave and vacation pay through arbitration was denied because of their failure to comply with the ten-day time limitation contained in the collective bargaining agreement. Wells Fargo rejected their demands for payment of accrued sick leave in writing on January 12, 1981, and for vacation wages on March 19, 1981. Under the labor contract, appellants were required to serve notice of intent to arbitrate within ten days. Because appellants did not serve notice until January 28, 1982 —nearly ten months after the ten–day limitation period had expired for the later letter of refusal—the arbitrator's refusal to hear the merits of appellants' claims was warranted under the agreement.

■ As we held in *Local 771, I.A.T.S.E., AFL–CIO v. RKO General, Inc.*, 546 F.2d 1107 (2d Cir.1977), an arbitrator's decision that a dispute is time barred under the procedural requirements of a labor agreement may not be overturned by the courts if that determination draws its essence from the agreement. *Id.* at 1113. Because it is clear to us that appellants' claims under the agreement were procedurally barred through failure to serve notice in a timely manner, and indeed appellants do not challenge this finding on appeal, they are without remedy in the absence of a cause of action independent of the contract's arbitration provisions. We therefore now turn to an examination of appellants' assertions that they may avail themselves of the statutory right of action provided by ERISA.

The ERISA provision upon which appellants rely provides, in relevant part, that

[t]he terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits. ...

29 U.S.C. § 1002(1) (1982). ERISA further empowers plan beneficiaries to bring civil actions to recover any benefits owed under

the terms of such a plan. *Id.* § 1132(a). Appellants contend that the payments they seek in this action clearly are included in the language of section 1002(1) as "benefits in the event of sickness" and "vacation benefits." Interpretations of the statute by the Secretary of Labor, however, point in a different direction.

■ Congress has delegated to the Secretary of Labor the authority to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" ERISA. *Id.* § 1135. Regulations have been adopted, pursuant to that authority, "to clarify the definition of the terms 'employee welfare plan' and 'welfare plan' ... by identifying certain practices which do not constitute employee welfare benefit plans...." 29 C.F.R. § 2510.3–1 (1983). Excluded by the regulatory scheme from classification as employee welfare benefit plans are certain enumerated "payroll practices," including "[p]ayment of an employee's normal compensation out of the employer's general assets, on account of periods of time during which the employee is ... absent for medical reasons" and "[p]ayment of compensation while an employee is on vacation or absent on a holiday." 29 C.F.R. § 2510.301(b)(2), (3) (1983). The regulations thus expressly exclude from ERISA coverage traditional sick leave and vacation wages paid out of an employer's general operating funds. The sick leave and vacation wages at issue here fall within the "payroll practices" provisions because they are payable: (1) out of Wells Fargo's general operating assets and not out of any separate account, fund or trust; (2) at the employees' normal rate of compensation; (3) for periods of time allowed as absences from employment for vacations, holidays and medical reasons; (4) in accordance with traditional practices; and (5) without additional conditions or contingencies of any kind. This determination is consistent with Department of Labor rulings identifying vacation benefits and practices having other characteristics as within ERISA coverage. *See, e.g.,* Department of Labor ERISA Opinion Letter 79–89A (vacation benefits, financed by contributions made by organization of employers to separate benefit fund established by employers and employee organization for subsequent distribution to employees, determined to constitute an employee welfare benefit plan). We entertain no doubt in this case that the wages in question are payroll practices excluded from ERISA coverage by the regulations. Whether the Secretary acted within his statutory powers in establishing the exclusion is the issue to which we now turn.

■ In passing on the validity of interpretive regulations, the United States Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statute it is entrusted to administer...." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). When potential ambiguity or conflict exists between the language of the statute and the regulation, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Both the validity of the regulations now at issue and the Secretary of Labor's authority to issue them have been upheld by our brethren in the Fourth and Ninth Circuits. *See California Hospital Association v. Henning,* 770 F.2d 856 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3273, 91 L.Ed.2d 564 (1986); *Abella v. W.A. Foote Memorial Hospital, Inc.,* 740 F.2d 4 (6th Cir.1984) (per curiam). As was pointed out in *Henning,* a primary concern of Congress in enacting ERISA was to prevent the mismanagement of funds accumulated to finance non-wage fringe and pension benefits. *Henning,* 770 F.2d at 859. We agree with the well-reasoned conclusion in *Henning* that from the payment of traditional sick leave and vacation wages out of an employer's general operating assets, there do not arise "the evils Congress intended to address." *Id.* Further, we fail to see how the policies underlying ERISA would be advanced by subjecting an employer to ERISA's extensive reporting and compli-

ance requirements merely because the employer provides customary benefits for sick days and vacations. Accordingly, the Secretary properly exercised his statutory authority to prescribe appropriate and necessary regulations to accomplish the purposes of ERISA by adopting the payroll practices exclusion challenged here.

■ Appellants seek to avoid the impact of the exclusion by contending that their sick leave and vacation pay benefits in fact are severance payments entitled to ERISA protection as employee welfare benefit plans under the provisions of 29 U.S.C. § 1002(1)(B) and 29 C.F.R. § 2510.3–1(a)(3). As to sick leave, it is dispositive that while employees were permitted to "cash out" up to one year of unused sick leave, the collective bargaining agreement made no provision for the payment of these benefits upon termination of employment. Accordingly, the sick leave program established by Wells Fargo cannot be categorized as a severance pay plan. Even if the benefits were payable upon termination, however, it is doubtful whether they would fall within the severance pay classification. *See, e.g. Abella,* 740 F.2d at 5 (accumulated sick leave payable on termination is payroll practice); Department of Labor ERISA Opinion Letter No. 79–48A (plan allowing accumulation of up to sixty days of sick leave to be paid on severance classified as payroll practice).

■ By the terms of the labor agreement, Wells Fargo is constrained to pay accumulated vacation benefits upon termination of employment. Relying upon *Holland v. Burlington Industries, Inc.,* 772 F.2d 1140 (4th Cir.1985), *aff'd mem.,* — U.S. ——, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986), and *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320 (2d Cir.1985), *aff'd mem.,* — U.S. ——, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986), appellants assert that this type of required payment must be characterized as severance pay afforded statutory protection as an employee welfare benefit plan. In *Gilbert,* we concluded that "the U.S. Department of Labor's interpretation that an unfunded severance pay policy is an 'employee welfare benefit plan' under § 1002(1)(B) is a reasonable construction of the statute and entitled to judicial deference." *Id.* at 326. We specifically "decline[d] to read unfunded severance pay benefits into the catch-all provision of the regulation defining payroll practices." *Id.*

While the cases relied upon by appellants support the proposition that a plan established by an employer for the payment of severance benefits is covered by ERISA, they are of no assistance to appellants. The payments appellants seek to recover here are not severance benefits and are not characterized as such in any document made available to us. In *Gilbert* and *Holland,* both dealing with the payroll severance policy of Burlington Mills, the employer's Policy Manual and a Salaried Employees' Handbook described in detail the company's severance pay program.

By contrast, the labor agreement governing the relationship between Wells Fargo and its employees contained no provision for severance benefits, and we are aware of no manual or handbook referring to such a provision. The vacation pay available to Wells Fargo employees was not contingent upon termination of employment or severance; to the contrary, accumulated vacation wages were payable whether or not employment continued. The conclusion is inescapable that Wells Fargo had no payroll severance policy. To be distinguished is the Department of Labor's determination that a program permitting employees to accumulate up to 104 weeks of vacation benefits for payment upon severance was within ERISA coverage. Department of Labor ERISA Opinion Letter No. 81–55A. In that plan, employees entered into an irrevocable agreement under which vacation wages could be deferred for payment in annual installments, with interest, after severance. The plan also provided for the withdrawal of funds, with the employer's written permission, upon demonstration of an immediate financial emergency. Furthermore, the issue presented to the Department of Labor was whether that deferred compensation program constituted an employee welfare benefit plan under section 1002(1), or an em-

ployee pension benefit plan under section 1002(2). No argument was made that such a scheme could constitute an excluded payroll practice. The opinion letter, therefore, is neither relevant nor helpful to appellants' claims.

## II. CONCLUSION

For the foregoing reasons, we conclude that appellants' sick leave and vacation pay constitute payroll practices excluded from ERISA coverage and we therefore affirm the district court's dismissal of appellants' claims.