**EMPLOYERS RESOURCE MANAGEMENT COMPANY, INCORPORATED; American Employers Benefit Trust, Plaintiffs–Appellants,**

v.

**Preston C. SHANNON, Commissioner; Theodore V. Morrison, Jr., Commissioner; H.W. Moore, Commissioner; Steven T. Foster, Commissioner of Insurance, Defendants–Appellees.**

No. 94–2611.

United States Court of Appeals, Fourth Circuit.

Argued July 13, 1995.

Decided Sept. 19, 1995.

---

10. We grant Appellees' motion for leave to file attachment five to their Reply Brief.

**ARGUED:** Allan Jacques Graf, Farmer & Ridley, Los Angeles, CA, for appellants. Michael Don Thomas, Associate General Counsel, Office of General Counsel, State Corporation Commission, Richmond, VA, for appellees. **ON BRIEF:** Robert W. Ridley, Farmer & Ridley, Los Angeles, CA; John D. Epps, Steven W. Morris, LeClair, Ryan, Joynes, Epps & Framme, P.C., Richmond, VA, for appellants. Anthony Gambardella, General Counsel, Peter B. Smith, Senior Counsel, Office of General Counsel, State Corporation Commission, Richmond, VA, for appellees.

Before ERVIN, Chief Judge,
MURNAGHAN, Circuit Judge, and
PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Chief
Judge ERVIN wrote the opinion, in which
Judge MURNAGHAN and Senior Judge
PHILLIPS joined.

## OPINION

ERVIN, Chief Judge:

This case arises from an attempt by the State Corporation Commission of the Commonwealth of Virginia ("SCC" or "Commission") to apply state insurance licensing laws to employee welfare benefit plans established and maintained by Employers Resource Management ("ERM"). Both the Commission and ERM agree that the applicability of Virginia law turns on whether ERM's benefit plans are properly characterized as Multiple Employer Welfare Arrangements—most commonly referred to as MEWAs. In this

appeal, we must resolve whether an ongoing, quasi-judicial proceeding before the Commission or federal district court is the proper forum for determining ERM's MEWA designation. For the reasons discussed below, we conclude that both the Anti–Injunction Act and the *Younger* abstention doctrine preclude us from enjoining the pending proceeding before the Commission. Consequently, the district court's decision to deny injunctive relief is affirmed.

### I.

Although we are not addressing the substantive question of whether ERM maintains a MEWA for purposes of regulation under Virginia's insurance laws, we begin by explaining briefly the company's function. ERM provides co-employment services to its client employers—designating itself on employees' W–2 forms as the employer, paying employee wages, and providing all employee benefits. In addition to these responsibilities, ERM conducts periodic safety inspections and ensures that occupational, health, and safety regulations are followed at all times. The primary employer is relegated, in effect, to the status of an on-site director of day-to-day operations. Nationwide, ERM has 1,200 co-employer clients who, in turn, employ 5,500 workers. The companies with which ERM works appear to be small operations that find it cost-efficient to delegate administrative tasks to a larger company.

Most relevant for purposes of this litigation, ERM serves as the fiduciary of employee welfare benefit plans that it establishes for the employees of its client co-employers. ERM finances the plans through fees paid by the co-employers and through optional employee contributions. The plans are fairly comprehensive, including hospital and medical benefits, dental benefits, and death benefits. ERM created the American Employers Benefit Trust, the other named plaintiff in this case, to hold all assets of the plans over which ERM exerts control.[1] ERM served as

---

1. Concentrating further on the substantive issue of whether ERM maintains a MEWA would shift our focus away from the issues that are the heart of this appeal. Although ERM properly avoided

the "ultimate" question of its ERISA status in its initial brief, the company dedicated a substantial portion of its reply brief trying to convince us that it should not be categorized as maintaining

plan administrator and as fiduciary of the plans in accordance with § 3(21)(A) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

As the body charged with the regulation of the business of insurance in the Commonwealth of Virginia, the SCC maintains subject matter jurisdiction over persons offering or providing coverage in the Commonwealth for health care services. VA.CODE ANN. § 38.2–3420 (Michie 1994). Pursuant to its authority under section 38.2–233 of the Virginia Code, the Commission developed specific regulations to govern the operation of all MEWAs. Employers found to be operating MEWAs are held accountable to the dictates of the Commonwealth's insurance laws. Believing that ERM was operating a MEWA without a license, the Commission initiated a state proceeding against the company on February 18, 1994. In response to the initiation of proceedings, ERM filed two suits in federal court. The first sought removal of the state proceeding to federal court under 28 U.S.C. § 1441(b), and the second requested injunctive and declaratory relief in the hopes of barring the Commission from subjecting ERM to regulation under Virginia's insurance laws. ERM argued that equitable relief was appropriate because the company was simply acting in its capacity as a single employer in maintaining an employee welfare benefit plan for its employees. Because it was not operating a *multiple* employer welfare arrangement, ERM claimed that it should not be subject to the dictates of the Commission or Virginia law.

Without deciding the merits of the case, the district court remanded ERM's removal action to the Commission [2] and denied ERM's claim for equitable relief. The district court found that the requests for injunc-

tive and declaratory relief were barred under the Anti–Injunction Act and the *Younger* abstention doctrine. ERM filed a timely notice of appeal from that decision.[3]

## II.

■ The fact that questions arising under ERISA are federal in nature is not enough to circumvent the dictates of the Anti–Injunction Act or the *Younger* abstention doctrine—the bases relied upon by the district court for denying ERM's request for injunctive and declaratory relief. For the following reasons, we join the Third and Fifth Circuits in holding that § 1132(a) of ERISA does not operate as an automatic exception to the Anti–Injunction Act. We also find that it was within the sound discretion of the district court to abstain under *Younger*, rather than to carve out an exception to the *Younger* abstention doctrine.

### A.

■ ERM will be entitled to injunctive relief only if we conclude that enjoining the SCC proceeding is permissible despite the dictates of the Anti–Injunction Act, 28 U.S.C. § 2283, which "generally bars federal courts from granting injunctions to stay proceedings in state courts."[4] *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 142, 108 S.Ct. 1684, 1687, 100 L.Ed.2d 127 (1988). Intended as a limitation on the ability of federal courts to interfere with the state judicial system, the Act provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where neces-

---

a MEWA. Those arguments have fallen on deaf ears, since our only task is to decide the forum in which that issue ultimately will be settled.

**2.** Because 28 U.S.C. § 1447(d) precludes an appeal of the district court's decision to remand the first case brought by ERM, the present appeal only concerns the district court's dismissal of the claim for equitable relief. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise [unless re-

moval of a civil rights case was sought under section 1443].").

**3.** We note that appellate jurisdiction is proper under both 28 U.S.C. § 1291 (appeal from a final order issued by the district court) and 28 U.S.C. § 1292(a)(1) (appeal from an order rejecting a claim for injunctive relief).

**4.** ERM agrees that the proceeding before the SCC qualifies as a state judicial proceeding for purposes of the Anti–Injunction Act.

sary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

We take seriously the mandate in the Anti–Injunction Act and recognize that for over two hundred years, the Act has helped to define our nation's system of federalism. *See Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491, 505 (5th Cir.1988) (referring to the Anti–Injunction Act as "a pillar of federalism reflecting the fundamental constitutional independence of the states and their courts"). As the Supreme Court observed in *Chick Kam Choo,* the Act serves as a "necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." 486 U.S. at 146, 108 S.Ct. at 1689. "[T]he consistent understanding has been that its [the Act's] basic purpose is to prevent 'needless friction between state and federal courts.'" *Mitchum v. Foster,* 407 U.S. 225, 232–33, 92 S.Ct. 2151, 2156–57, 32 L.Ed.2d 705 (1972) (quoting *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.,* 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 537 (1940)). Any discussion of federalism will, by its very nature, involve a balancing of federal and state interests, and the Anti–Injunction Act plays a critical role in ensuring that the proper balance is maintained.

■ Notwithstanding the Act's basic purpose of preserving the integrity of state judicial systems, Congress defined three instances in which injunctions are permitted and it now is settled that the Act is "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [those] three specifically defined exceptions." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). Injunctions, therefore, are permitted when they are expressly authorized by statute, necessary to aid the court's jurisdiction, or required to protect or effectuate the court's judgment "to ensure the effectiveness and supremacy of federal law." *Chick Kam Choo,* 486 U.S. at 146, 108 S.Ct. at 1689. The exceptions are construed narrowly, however, and are "not [to] be enlarged by loose statutory construction." *Atlantic Coast Line,* 398 U.S. at 287, 90 S.Ct. at 1743; *Amalgamated Clothing Workers v. Richman Brothers,* 348 U.S. 511, 514, 75 S.Ct. 452, 454, 99 L.Ed. 600 (1955) (noting that § 2283's prohibition "is not to be whittled away by judicial improvisation"). Unlike *Chick Kam Choo,* in which only the Anti–Injunction Act's third exception was "even arguably applicable," 486 U.S. at 146, 108 S.Ct. at 1689, our analysis of the Act turns primarily on the applicability of its first exception.

■ The Anti–Injunction Act's "expressly authorized" exception is not triggered simply by the fact that a state proceeding involves a question of federal law. "Rather, when a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court." *Chick Kam Choo,* 486 U.S. at 149–50, 108 S.Ct. at 1691. The circuits are in agreement that the existence of preemption does not control application of the Anti–Injunction Act. *See, e.g., National R.R. Passenger Corp. v. Florida,* 929 F.2d 1532, 1535 (11th Cir.1991); *Total Plan Services, Inc. v. Texas Retailers Ass'n, Inc.,* 925 F.2d 142 (5th Cir.1991); *U.S. Steel Corp. Plan for Employee Ins. Benefits v. Musisko,* 885 F.2d 1170 (3rd Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). In the ERISA context, in particular, it has been noted that the applicability of the Anti–Injunction Act's exceptions, and not the fact that ERISA preempts state-law claims brought by employees against employee benefit plans, is the basis on which the injunction issue is to be resolved.[5] *See, e.g., 1975 Sala-*

---

5. We recognize that there is compelling evidence supporting the proposition that Congress intended for ERISA to preempt state law. Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983) (citing 29 U.S.C. § 1144(a)). This rather straightforward provision is flushed out further throughout the legislative history. *See* 120 Cong. Rec. 29197 (1974) (statement of Rep. Dent) (claiming that the "crowning achievement" of the legislation was the "reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans"); *id.* at 29933 (state-

*ried Retirement Plan v. Nobers,* 968 F.2d 401, 408–10 (3rd Cir.1992) (holding that injunction against prosecution of state court contract action brought by laid off employees against employer did not come within exception in the Anti–Injunction Act as "expressly authorized by Act of Congress" simply because the state-court claims were preempted by ERISA, even if the state court claims were subject to exclusive federal jurisdiction), *cert. denied,* —— U.S. ——, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993).

■ In arguing that ERISA qualifies as an express exception to the Anti–Injunction Act, ERM overstates the relevance of the Supreme Court's decision in *Mitchum v. Foster.* While we recognize that a federal law need not contain an express reference to the Anti–Injunction Act in order to qualify under the "expressly authorized" exception, *id.* at 237, 92 S.Ct. at 2159, in order to justify the grant of injunctive relief, it is necessary to demonstrate that the federal scheme in question has created "a specific and uniquely federal right or remedy, enforceable in a federal court of equity, *that could be frustrated if the federal court were not empowered to enjoin a state court proceeding."* *Mitchum,* 407 U.S. at 237, 92 S.Ct. at 2159 (emphasis added). In *Mitchum,* the Court found that 42 U.S.C. § 1983 entails such a scenario. It does not necessarily follow from the *Mitchum* ruling, however, that the same result is compelled in the ERISA context.

■ While we appreciate that Congress intended for ERISA to operate primarily in the federal sphere, we do not believe that ERISA created the type of "unique" federal right or remedy that was at issue in *Mitchum*'s consideration of 42 U.S.C. § 1983. As the *Mitchum* Court acknowledged, an entirely new structure of law emerged in the post-Civil War era, and § 1983, in particular, "opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum,* 407 U.S. at 239, 92 S.Ct.

at 2160. Section 1983 provides the quintessential example of a congressional act designed to displace state law. At its heart, § 1983 is meant to provide citizens with relief in those cases in which their rights have been violated under color of state law. It would make no sense to prohibit federal courts from enjoining on-going state proceedings if the entire purpose of the congressional enactment was to protect individuals from state action. *Id.* at 240, 92 S.Ct. at 2161; *see also id.* at 242, 92 S.Ct. at 2162 ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights.").

The ERISA statutory scheme is not sufficiently analogous to the scheme developed under § 1983 for us to extend *Mitchum* into the ERISA setting. Although ERISA was designed to unify the nation's laws regarding employee welfare benefits, there was never a sense that Congress enacted ERISA because "state courts were being used to harass and injure individuals." *Id.* at 240, 92 S.Ct. at 2161. That, however, was precisely the reason Congress enacted § 1983. *Id.* at 242, 92 S.Ct. at 2162. Section 1983 was passed in response to a perceived failure of the state system. *See id.* at 242, 92 S.Ct. at 2162 (noting that the "legislative history makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created [civil] rights"); *cf. Pennsylvania v. Union Gas,* 491 U.S. 1, 41–42, 109 S.Ct. 2273, 2302–03, 105 L.Ed.2d 1 (1989) (Scalia, J. concurring) (noting that the Civil Rights Act of 1871 was intended to be a "limitation[ ] of the power of the States and enlargement[ ] of the power of Congress"). ERM makes no claim that ERISA was enacted for similar reasons. A distrust of state courts did not play the same role in the development of ERISA as it did in the formation of § 1983. *See 1975 Salaried Retirement Plan,* 968 F.2d at 410 (pointing out that "Congress had no overarching distrust that state courts would disregard ERISA, unlike

ment of Sen. Williams) ("[W]ith the narrow exceptions specified in the bill, the . . . provisions . . . are intended to preempt the field for Federal

regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans.").

Congress's concerns about state court violations of section 1983").

Other circuits are divided on the issue of whether ERISA carves an exception into the Anti–Injunction Act that enables federal courts to enjoin state proceedings when a party raises a question of federal law under ERISA. *Compare Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320 (2d Cir.1985) (finding that § 1132(a) of ERISA constitutes an exception to the Anti–Injunction Act and affirming district court's grant of injunction of state court proceeding); *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980) (same) *with Total Plan Services,* 925 F.2d 142 (finding no ERISA exception and affirming district court's denial of injunctive relief); *Musisko,* 885 F.2d 1170 (same). The "circuit split" that allegedly exists between the Third and Fifth Circuits, on the one hand, and the Second and Sixth Circuits, on the other, is far less troubling once the particular cases are examined. We join the Third and Fifth Circuits in rejecting the notion that ERISA operates as an automatic exception to the Anti–Injunction Act.

In *General Motors Corp. v. Buha,* the district court had enjoined a state court judge from enforcing a writ of garnishment. The defendant, Buha, had obtained previously a state court judgment against Walter Kinsky in a tort action. *Buha,* 623 F.2d at 457. Kinsky did not pay the judgment, and Buha instituted post-judgment garnishment procedures. A writ of garnishment was served on a bank that was serving as trustee for a General Motors pension plan. The bank denied liability as the trustee of the pension fund, and Buha demanded an examination of the bank. *Id.* GM filed an action in federal district court, requesting that the court restrain enforcement of the writ.

On appeal, the Sixth Circuit evaluated the propriety of the district court's decision to enjoin the state court proceedings. The appellate court relied exclusively on the Supreme Court's *Mitchum* decision, without ever acknowledging the differences between § 1983—the congressional scheme at issue in *Mitchum*—and ERISA—the Act under consideration in *Buha.* The central question for

the *Buha* court was whether ERISA "could be given its intended scope only by the stay of a state court proceeding." *Buha,* 623 F.2d at 458 (quoting *Mitchum,* 407 U.S. at 238, 92 S.Ct. at 2160). In answering that question in the affirmative, the *Buha* court focused on the fact that ERISA had been enacted to provide a uniform framework for the regulation of employees' benefit plans. *Id.* at 459 (quoting 120 Cong.Rec. 29197 (1974) (statement of Rep. Dent).[6]

It does not follow, however, as the *Buha* court implies, that *every* discrepancy touching on ERISA requires federal courts to enjoin ongoing state proceedings in order for ERISA to be given its intended scope. In fact, *Buha*'s holding may be read in a far more limited fashion than ERM has suggested. The court simply held:

> When a district court finds that an action in a state court will have the effect of *making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA,* the anti-injunction provisions of § 2283 do not prohibit it from enjoining the state court proceedings.

*Buha,* 623 F.2d at 459 (emphasis added). Had *Buha* not enjoined the state proceedings, the trustee of the General Motors pension plan, along with GM itself, might have been unable to carry out its responsibilities under ERISA. The present case, on the other hand, does not present a scenario in which someone claims they are owed funds from a pension plan. ERM has never suggested that it will be unable "to carry out its responsibilities under ERISA" if it is subjected to Virginia insurance law. ERM is not in the same position as General Motors was in *Buha.* We do not find that affirming the district court's decision in this case would run counter to the dictates of *Buha.*

Like *Buha, Gilbert v. Burlington Industries, Inc.,* is a case in which an ERISA plan fiduciary faced the possibility of not being able to fulfill its ERISA responsibilities if forced to resolve a dispute in state court. Thirty-six former employees of Burlington Industries sued the company, claiming that severance pay was owed upon their termi-

6. *See supra* note 5.

nation of employment. The Second Circuit, after spending most of its time determining whether a severance pay policy constitutes an employee welfare benefit plan under ERISA, *Gilbert*, 765 F.2d at 324–26, dispensed with the issue of whether the district court had acted improperly in enjoining the state administrative proceeding in only one paragraph. *Id.* at 329. The court merely asserted, without any analysis to support its claim, that "the injunction falls within the [Anti–Injunction] Act's exception for actions 'expressly authorized' by federal law." *Id.*

We find that *Gilbert*, like *Buha*, does not provide us with a sufficiently compelling reason to circumvent the Anti–Injunction Act. As was the case in *Buha*, the *Gilbert* court simply assumed that ERISA should be treated in the same manner as § 1983 had been treated by the Supreme Court in *Mitchum*. In order to escape the rather strict provisions of the Anti–Injunction Act, there must be some basis—beyond the desire to create a uniform federal system of law—to justify the complete exclusion of state courts from the process. *Gilbert* never offers that type of analysis. Furthermore, it made more sense in *Gilbert* than in the present case to enjoin state proceedings, because the ERISA fiduciary was facing an action brought by plan participants. As we noted in the context of our discussion of *Buha*, ERM has not explained the ways in which its adherence to ERISA may be jeopardized by allowing the SCC to continue with its proceeding.

Although the arguments set forth by the Second and Sixth Circuits are unpersuasive, we find the decisions of the Third and Fifth Circuits to be instructive. Unlike *Buha* and *Gilbert*, which applied a blanket policy that all ERISA actions brought in state courts must, by necessity, be enjoined, the Fifth Circuit's decision in *Total Plan Services, Inc. v. Texas Retailers Assn., Inc.*, 925 F.2d 142 (5th Cir.1991), rejected the idea that ERISA's federal nature completely shuts off access to state courts. *Id.* at 144. Relying on the Supreme Court's decision in *Chick Kam Choo*, the *Total Plan Services* court placed great weight on the fact that the statutory exceptions to the Anti–Injunction

Act "are narrow and are 'not [to] be enlarged by loose statutory construction.'" 925 F.2d at 144 (quoting *Chick Kam Choo*, 486 U.S. at 146, 108 S.Ct. at 1689). The Fifth Circuit went beyond simply noting that Anti–Injunction Act exceptions are rarely applicable and added that "'any doubts are to be resolved in favor of allowing the state court action to proceed.'" 925 F.2d at 144 (quoting *Texas Employers' Insurance Ass'n v. Jackson*, 862 F.2d 491, 499 (5th Cir.1988) (en banc), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989)). According to *Total Plan Services*, such principles apply when the state proceedings "interfere with a protected federal right or invade an area preempted by federal law, *even when the interference is unmistakably clear.*" *Id.* (quoting *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970)). Even § 1132 of ERISA, which appears to create an exception to the Anti–Injunction Act, could not be read as making the mere filing of a state court proceeding a violation of ERISA. *Id.* "*[S]imply because an area of law is federal, the proper forum to make that determination is not necessarily federal as well.*" *Id.* at 145 (emphasis added).

In *Total Plan Services*, the Fifth Circuit relied heavily on similar analysis that had been provided two years earlier by the Third Circuit in *U.S. Steel Corp. Plan for Emp. Ins. v. Musisko*, 885 F.2d 1170 (3d Cir.1989). In that case, the Third Circuit rejected the plaintiffs' attempt to broaden the three narrow exceptions to the Anti–Injunction Act. The *Musisko* court observed that "[c]onspicuously absent from the language of this ERISA injunction provision is any suggestion of its use by federal courts against state tribunals." *Id.* at 1177. *Musisko* laid out the case against granting injunctive relief and for preserving the integrity of the state system:

> A federal court may not enjoin state court proceedings merely because they "invade an area pre-empted by federal law even when the interference is unmistakably clear," *Chick Kam Choo*, 486 U.S. at [149], 108 S.Ct. at 1691, or where the "incursion upon a federally pre-empted domain dislocates the federal scheme as a

whole," *Richman Bros.*, 348 U.S. at 517, 75 S.Ct. at 456. The fact that the state proceeding presents a preemption issue does not alter the respect due the state tribunal. "*[T]he proper course is to seek resolution of that issue by the state court.*" *Chick Kam Choo*, 486 U.S. at [150], 108 S.Ct. at 1691.

885 F.2d at 1177–78; *accord 1975 Salaried Retirement Plan*, 968 F.2d at 408–10.

We conclude that the sounder position is the one adopted in the Third and Fifth Circuits—i.e., the Anti–Injunction Act allows for only limited exceptions to its general rule of not enjoining state proceedings and the mere fact that ERISA is rooted in federal law does not preclude a state court from operating as the forum in which federal law is to be considered. As the Fifth Circuit observed in *Total Plan Services:*

> Although plaintiffs present good arguments that the proper tribunal for an ERISA fiduciary action is a federal court, the appropriate authority to decide the scope of the ERISA preemption issue in *this* case is the state court, where the action initially was filed and where this issue initially was presented and ruled upon. As the Supreme Court has stated, we should not be swayed by any "assumption … that federal rights will not be adequately protected in the state courts." *Amalgamated Clothing Workers*, 348 U.S. at 517, 75 S.Ct. at 456.

925 F.2d at 146. Like the Fifth Circuit, we resolve all doubts "in favor of allowing the state court action to proceed." *Texas Employers' Insurance Ass'n*, 862 F.2d at 499. Recognizing the preemption of state law and respecting the dictates of the Anti–Injunction Act are not mutually exclusive. Unwilling to construe broadly the Anti–Injunction Act's limited exceptions, we affirm the district court's denial of injunctive and declaratory relief.

**B.**

Our review of *Younger* abstention principles is far more limited than the review we undertook in the Anti–Injunction Act setting. This court reviews a district court's decision to abstain only for an abuse of discretion. *Martin Marietta v. Maryland Comm'n on Human Rel.*, 38 F.3d 1392, 1396 (4th Cir.1994); *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993).

Unlike our discussion of the Anti–Injunction Act, in which we noted that enjoining state proceedings is generally to be avoided, our consideration of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), begins with the basic proposition that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2326–27, 81 L.Ed.2d 186 (1984); *Pomponio v. Fauquier County Bd. of Sup'rs*, 21 F.3d 1319, 1324 (4th Cir.1994); *see also Forst*, 4 F.3d at 251 (noting that the "obligation to hear cases properly before the district court is 'virtually unflagging'") (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)). Put simply, the doctrine of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). While the Anti–Injunction Act is designed to affirm the legitimacy of the state forum, the limited nature of the *Younger* abstention doctrine reinforces the preeminence of the federal system in certain areas of law.

*Younger* abstention is appropriate only in those cases in which (1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal claims in the state proceeding.[7] *Middlesex County Ethics*

---

**7.** We note that although *Younger* involved criminal proceedings, the Supreme Court has since extended abstention principles into noncriminal judicial proceedings, *see, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603–04, 95 S.Ct. 1200, 1207– 08, 43 L.Ed.2d 482 (1975), and into state administrative proceedings that are judicial in nature. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1986).

*Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Abstention will not be required unless the "state court proceedings [have been] initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *Hawaii Housing Authority,* 467 U.S. at 238, 104 S.Ct. at 2328 (quoting *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975)). Here, the Commission proceeding began two weeks before ERM filed its claims in federal court. For that matter, ERM concedes that all three elements of *Younger* have been met in this case.

■ ERM asks us to consider, however, whether a set of extraordinary circumstances exist in this case that would warrant a circumvention of the *Younger* abstention doctrine so that the substantive issue of whether ERM is operating a MEWA can be resolved in federal court. The Supreme Court has recognized that in "extraordinary circumstances," the federal courts may disregard the "strong federal policy against federal-court interference with pending state judicial proceedings." *Middlesex County Ethics Committee,* 457 U.S. at 431, 102 S.Ct. at 2521. While no discretion exists to grant injunctive relief when a case is properly within the *Younger* category of cases, *Colorado River,* 424 U.S. at 816 n. 22, 96 S.Ct. at 1246 n. 22, such discretion can be exercised when extraordinary circumstances exist. We recognized as much in *Forst,* when we noted that "[a]bstention is not necessarily appropriate in every civil action that meets the formal requirements of the *Younger* doctrine." *Forst,* 4 F.3d at 251 (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 368, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989) ("*NOPSI* ")). In effect, the *Younger* abstention doctrine, which is an exception itself, comes with its own exception.

ERM relies heavily on *Forst,* because it is an instance in which this court explicitly carved out an exception to *Younger* abstention. In *Forst,* we concluded that Congress had created "a clear exception to the principles of comity that underlie *Younger* abstention," *Forst,* 4 F.3d at 251, in section 306 of

the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4–R Act"). ERM asks that we reach the same conclusion with respect to ERISA that *Forst* reached with respect to the 4–R Act. The *Forst* court held:

> In the narrow context of state taxation of railroad property, Congress has determined that the principles of comity that underlie the Tax Injunction Act—the principles that also underlie *Younger* abstention—simply do not apply. Section 306 defines an entire category of cases in which "extraordinary circumstances" exist to justify federal court intervention in state taxation matters. Consequently, the district court abused its discretion by abstaining under *Younger.*

*Id.* at 252. It was not simply that the parties' dispute arose under federal law, but also that Congress had determined that "railroads were entitled to adjudicate their disputes with state taxing authorities in federal court." *Id.* at 254. There was no concern on our part with the competence of the state courts to decide issues of federal law. *Id.* at 251. Instead, we were guided by the fact that Congress had passed section 306 of the 4–R Act as an explicit exception to the Tax Injunction Act. Congress' preference for a federal forum was rooted in "[t]he history of state discrimination against railroads—including the railroads' experience in the state courts." *Id.* at 252. That history convinced Congress to "restore the power of the federal courts to enjoin discriminatory state taxation of railroads." *Id.*

Unlike the *Forst* court, which chose not to adhere to *Younger* abstention principles based on a clearly articulated congressional desire to have issues under the 4–R Act litigated in federal court, our decision in *Martin Marietta* affirmed the district court's holding that *Younger* abstention was applicable and that the state administrative proceeding regarding an employee's discrimination claim should continue. 38 F.3d at 1395. The question at the heart of the *Martin Marietta* litigation was the same one posed in *Forst*—whether particular acts of Congress create the type of extraordinary circumstances that justify the circumvention of

*Younger* abstention.[8] *Id.* at 1396. In *Martin Marietta*, we determined that neither of the two acts in question preempted the Maryland Commission on Human Relations' jurisdiction over the claims brought by a former Martin Marietta employee. *Younger* abstention did not apply. Our decision stood in contrast to our holding in *Forst*, in which we acknowledged that Congress had a "clear[ ] concern[ ] that the states were not providing an 'adequate' opportunity for railroads to remedy discriminatory taxation." *Forst*, 4 F.3d at 252. No similar shortcoming on the part of the state system existed in *Martin Marietta* so as to trigger concerns about "the abilities of state courts to provide adequate remedies for federal rights." *Forst*, 4 F.3d at 252.

The *Martin Marietta* court reaffirmed *Younger*'s "strong policy against federal court interference with any pending state judicial proceeding unless extraordinary circumstances so warrant." 38 F.3d at 1396. That an issue of federal law is before a state court or administrative agency does not, in and of itself, suggest that a federal court must seize the matter for its own consideration. *See id.* (recognizing that, for purposes of *Younger*, "state courts are fully competent to decide issues of federal constitutional law"). We observed that under the Supreme Court's decision in *NOPSI*, substantial claims of preemption do not automatically preclude abstention. *Id.* (citing *NOPSI*, 491 U.S. at 365, 109 S.Ct. at 2516–17).

Even though we ultimately agree with the SCC that it was proper for the district court, with *Younger* abstention in mind, to remove itself from this controversy, we recognize that the federal-state balance, which *Younger* abstention is designed to maintain, has been skewed sharply in favor of the federal system in the ERISA context. Congress has shown clearly its interest in uniform regulation of pension plans and its intention "to establish pension plan regulation as exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). It enacted broad preemption provisions to save employ-

ers from conflicting and inconsistent state and local regulation of employee benefit plans. *See Shaw*, 463 U.S. at 90–91, 103 S.Ct. at 2896–97. We find that Congress has made it as clear under ERISA as it has under the 4–R Act that federal interests outweigh competing state interests.

The problem for ERM is that it has not shown, as the railroad company in *Forst* did, how it would be injured by having to raise its preemption defense in the state proceedings rather than in federal district court. ERM perceives that the Commission is more likely than a federal district court to label ERM's pension plans as MEWAs, thus leaving ERM subject to Virginia's insurance laws. The fact that ERM would prefer a federal forum is not a serious enough interest to rise to the level of an exception to *Younger* abstention. In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Supreme Court recognized that federal court intervention is allowed in those cases

> where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.

*Id.* at 611, 95 S.Ct. at 1212. ERM has not provided us with any reason to believe that the Commission is either incapable of reviewing ERM's claim of preemption under ERISA or that the Commission is somehow less trustworthy than its federal counterpart. We refuse to create an exception to *Younger* abstention based on ERM's mere assertion of an ERISA preemption challenge. Thus, the district court did not abuse its discretion in abstaining under *Younger*.

### III.

Our decision today is not intended to detract, in any way, from the uniquely federal nature of ERISA. Rather, we recognize that "simply because an area of law is federal, the proper forum to make that determination is

---

**8.** In *Martin Marietta*, our attention focused on section 301 of the Labor Management Relations

Act, 29 U.S.C. § 185(a) (1988), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

not necessarily federal as well." *Total Plan Services,* 925 F.2d at 145. Although "superficially compelling," *id.,* we reject the argument that the preeminence of federal law somehow precludes consideration of federal law in the context of a state administrative proceeding. We recognize that even when presented with a question such as ERM's MEWA classification—which ultimately must be determined by examining federal law—we have an equally compelling responsibility to preserve the integrity of the competing state system. Upon close examination, we do not find that ERISA operates as an automatic exception to the Anti–Injunction Act, nor do we find that this case presents us with the type of extraordinary circumstances that would justify ignoring principles of *Younger* abstention. Accordingly, the judgment of the district court is

*AFFIRMED.*