**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LAROSE T. SHIRLEY,
<u>Plaintiff-Appellant,</u>

v.

No. 98-1750

BARBARA DRAKE, official capacity;
MARY CRAIG, individual capacity;
ARLINGTON COUNTY, VIRGINIA,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan Jr., Senior District Judge.
(CA-98-368-A)

Argued: January 27, 1999

Decided: April 12, 1999

Before WILKINSON, Chief Judge, and NIEMEYER and
TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ernest Paul Francis, ERNEST P. FRANCIS, LTD.,
Arlington, Virginia, for Appellant. Joseph Peter Dyer, Jr., SICILI-
ANO, ELLIS, DYER & BOCCAROSSE, Fairfax, Virginia, for
Appellee Craig; Ara Loris Tramblian, Deputy County Attorney,
Arlington, Virginia, for Appellees Drake and Arlington County.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This matter emanates from an order issued by a Virginia domestic relations court prohibiting LaRose T. Shirley ("Shirley") from having any contact with her teenage granddaughter ("Jane").[1] Shirley filed an action under 42 U.S.C.A. § 1983 (West Supp. 1998), seeking to impose liability against Mary E. Craig ("Craig"), an Assistant Arlington County Attorney, for her role in procuring the order. Shirley also sought injunctive relief against Craig's supervisor, Barbara Drake ("Drake"), who played no role whatsoever in the state proceedings, and Arlington County itself. The district court granted summary judgment against Shirley and dismissed her complaint in its entirety. We affirm.

I.

In January 1996, Jane informed Arlington County police that her father, George Patrick Crapps ("Crapps"), had sexually assaulted her.[2] At the time of her complaint, Jane was living with her mother and Crapps. Shirley, Crapps' mother, also resided with the family.

As a result of Jane's allegations against Crapps, the Arlington County Department of Social Services ("DSS") initiated an abuse and neglect petition in the Arlington Juvenile and Domestic Relations Court (the "JDR Court") and a guardian ad litem was appointed to protect Jane's interests. The JDR Court initially ordered that Jane be removed temporarily to the custody of DSS, but she was returned to her mother's custody shortly thereafter.

_____

**1** In an attempt to protect the identity of Shirley's granddaughter, who was a young teenager at the time of these events, we refer to her as Jane, which is not her real name.

**2** Crapps was ultimately convicted of taking indecent liberties with Jane and was sentenced to prison.

Craig represented DSS in prosecuting the removal petition in JDR Court. During the course of the proceedings, Craig learned that Shirley had removed Jane from school without the knowledge of Jane's mother and had taken Jane to meet with an attorney that Shirley had retained to represent her son on sexual assault charges. At this meeting, Shirley allegedly pressured Jane to recant her assertion that Crapps had sexually abused her -- an allegation that Shirley denies. Based on this information, and with the full support of Jane's guardian ad litem who was charged with protecting Jane's best interests, DSS obtained a protective order from the JDR Court directing that Crapps and Shirley "have no contact whatsoever with [Jane] until further order of this Court." Shirley was not present at the hearing before the JDR Court, and she contends that she received no notice that DSS was seeking such an order. Nevertheless, despite her belief that the protective order was illegal and that Craig, acting on behalf of DSS, disregarded state law in obtaining the order, Shirley did not seek, and has never sought, a modification of the order by the JDR Court, nor has she ever pursued an appellate remedy in the Virginia courts.

Instead, Shirley seeks relief in federal court pursuant to § 1983. Specifically, Shirley alleges that Craig violated her procedural and substantive due process rights in pursuing the protective order on behalf of DSS. She also believes that Craig encroached upon her First Amendment rights. Shirley additionally asserts that Arlington County and Drake infringed her due process rights and that the federal courts should intervene and enjoin enforcement of the JDR Court's order.

II.

A.

We turn first to Shirley's claims that Craig's role in obtaining the protective order subjects Craig to liability under§ 1983. The district court concluded that Craig enjoyed absolute immunity from this action, and we agree. Prosecutors are absolutely immune from civil liability under § 1983 when they are performing functions which are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Provided a state's attorney is acting "within the scope of [her] duties in initiating and pursuing a criminal prosecution," she is absolutely immune to suit

3

pursuant to § 1983. Id. at 410. In making an immunity determination, we are to consider "`the nature of the function performed, not the identity of the actor who performed it.'" Kalina v. Fletcher, 118 S. Ct. 502, 508 (1997) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). Absolute immunity attaches when the prosecutor is performing "the traditional functions of an advocate." Id. at 510. Clearly, one of the classic functions of an advocate is the presentation of a motion to the court, which necessarily requires the prosecutor to summarize the supporting evidence, i.e., to make representations to the court regarding the facts. See id. at 509-510. An attorney for the state who represents DSS in a proceeding involving the alleged abuse and neglect of a child is entitled to the same protection in her advocacy role that she would have if she were representing the state in a criminal proceeding. See Vosburg v. Department of Soc. Servs., 884 F.2d 133, 138 (4th Cir. 1989) (holding that "social workers are absolutely immune from liability resulting from their decision to file a [custody] removal petition").

Shirley alleges simply that Craig made false representations to the JDR Court in obtaining the protective order. Even if Craig's presentation of facts to the JDR Court ultimately proved to include false information, there is no dispute that Craig served as the DSS attorney in seeking the protective order against Crapps and Shirley, and that any information she furnished to the court was provided during the course of her motion. Craig was obviously performing a traditional function of an advocate and is entitled to absolute immunity. See id.

Nevertheless, Shirley makes the unsupported assertion that Craig served as a witness during the proceedings, which removed Craig from the protective sweep of absolute immunity under Kalina. There is utterly nothing in the record to indicate Craig did anything other than recite background facts to the JDR Court -- a function that is clearly protected by absolute immunity. Indeed, in her complaint, Shirley alleges only that Craig made "misrepresentations" and "accusations" to the JDR Court; Shirley does not allege that Craig testified under oath or presented her own affidavit in support of the motion. Even if we accept these allegations as true, Craig was clearly acting within her role as an advocate. Thus, Craig is protected by absolute immunity.

4

B.

Shirley's claims against Arlington County and Drake are even more troublesome. To the extent Shirley contends that Arlington County and Drake are subject to liability under § 1983, her claims are wildly off the mark. Shirley's complaint alleges that Arlington County violated her due process rights because the protective order "was entered in a court established by and for defendant Arlington County and was the result of efforts initiated by one of its attorney/employees." As the district court correctly concluded, the JDR Court is a court of the Commonwealth of Virginia, not of Arlington County. See Va. Code Ann. § 16.1-69.7, 69.8 (Michie 1996). Moreover, Shirley does not even allege that an Arlington County policy caused her supposed deprivations, much less offer any facts in support of such an assertion. Therefore, Shirley's assertions against Arlington County rest on a respondeat superior theory of liability -- clearly not a viable basis for recovery under § 1983. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). And, Drake played no role in obtaining the protective order. Drake is a party to the case only because she is employed as Craig's supervisor. Thus, Shirley cannot impose damages against Drake under § 1983.

To avoid the effect of these conclusions, Shirley argues that she is nevertheless entitled to injunctive relief against Arlington County and Drake under § 1983. Below, she sought an order from the district court enjoining Arlington County and Drake "from taking any measures to enforce" the protective order issued by the JDR Court. In essence, Shirley wants to involve the federal courts in an area that is traditionally -- and obviously -- the states' domain.

We refuse to become embroiled in what is clearly an ongoing state affair. Federal courts are obliged to decline jurisdiction to interfere with ongoing state court proceedings even if the parties allege constitutional violations. See Younger v. Harris, 401 U.S. 37, 41 (1971); Employers Resource Management Co. v. Shannon, 65 F.3d 1126, 1134 n.7 (4th Cir. 1995) (explaining that the Younger abstention doctrine has been expanded to cover noncriminal judicial proceedings). Younger abstention is proper when "(1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal

5

claims in the state proceeding." <u>Shannon</u>, 65 F.3d at 1134. We conclude that <u>Younger</u> abstention is required here. The matter is ongoing; by its very terms, the order is effective "until further order of [the JDR] Court." Important state interests are involved. Indeed, domestic relations issues are uniquely local matters upon which we will not encroach. We also think it is clear that Shirley had adequate recourse in the courts of the Commonwealth of Virginia to raise her federal constitutional claims.

Yet, Shirley has made no attempt to raise these claims in state court by using available state procedures to challenge the protective order. She did not avail herself of Virginia's appellate courts, nor did she even ask the JDR Court to modify its order. Rather, she seeks to modify this order in federal court without first allowing the state courts an opportunity to do so. Shirley has not explained why these avenues to challenge the protective order are inadequate to allow her to raise her federal constitutional claims, other than simply to speculate that she would not receive fair treatment based on her perception that the JDR Court has already once denied her constitutional rights in issuing the protective order.

As we have noted on other occasions, "[w]here post-deprivation state procedures are available which satisfy due process concerns, it is particularly appropriate for the federal courts to abstain from deciding matters best left to the states." <u>Weller v. Department of Soc. Servs. for Baltimore</u>, 901 F.2d 387, 396 (4th Cir. 1990). Here, under <u>Younger</u> abstention principles, it is simply inappropriate for us to interfere, and we refuse to do so. <u>See Liedel v. Juvenile Court of Madison County, Ala.</u>, 891 F.2d 1542 (11th Cir. 1990) (holding that <u>Younger</u> required dismissal of an action requesting an injunction against the issuance of orders by a state juvenile court).**3**

_____

**3** Furthermore, even if it were appropriate for us to meddle in this state domestic relations matter, and even if Craig were not protected by immunity, we question whether Shirley stated a viable due process claim. In the first place, she has not convinced us that she suffered the deprivation of a constitutionally protected liberty interest. <u>See Williams v. Williams</u>, 485 S.E.2d 651, 652-53 (Va. App. 1997) (observing that there is no common law right of visitation for grandparents in Virginia), <u>aff'd as modified</u>, 501 S.E.2d 417 (Va. 1998); <u>see also Ellis v. Hamilton</u>, 669

III.

For the foregoing reasons, we conclude that Shirley's appeal is without merit, and we affirm the decision of the district court.

AFFIRMED

_____

F.2d 510, 513 (7th Cir. 1982) (expressing doubt that grandparents maintain a protected liberty interest in visitation of their grandchildren when the grandchildren are in their parents' custody). And, even when the state has infringed upon a protected liberty interest, there is no due process violation if the state -- as does the Commonwealth here -- has sufficient post-deprivation remedies. See Ingraham v. Wright, 430 U.S. 651, 676-82 (1977). Shirley has not even attempted to use any of these avenues of relief.

7